**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

WILLIAM BELL, )  3:11-cv-00745-RCJ (WGC)
        Plaintiff, )
        vs. )  **REPORT AND RECOMMENDATION**
JOHN PEERY, et al., )  **OF U.S. MAGISTRATE JUDGE**
        Defendants. )

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Temporary Restraining Order, or in the Alternative, Motion for Preliminary Injunction. (Doc. #5.)[1] Defendants opposed (Doc. # 9) and Plaintiff replied (Doc. # 36). After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff William Bell (Plaintiff) was in custody of the Nevada Department of Corrections (NDOC), housed at Northern Nevada Correctional Center (NNCC). (Pl.'s Compl. (Doc. # 4) 1.) Plaintiff, a *pro se* prisoner, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Defendants are Keith Ownsby, Janet Lamb, David Mar, John Peery, and Sandra Snider (collectively, Defendants). (*Id*. at 1-3.)

Plaintiff alleges that he was put on the anti-psychotic drug Abilify. (Doc. # 4 at 3-4.) He complained of difficulty breathing and swallowing, high blood pressure, chest pains, headaches,

---

[1] Refers to court's docket number.

1  dizziness, concentration and memory problems, insomnia and rectal leakage, and asked to stop
2  taking Abilify. (Doc. # 4 at 3-4, 6-16.) He alleges that Defendants refused to take him off the
3  medication and threatened to place him in mental health segregation if he refused to take the
4  drug. (*Id.*) On screening, the court determined that Plaintiff states a colorable claim for
5  deliberate indifference to a serious medical need under the Eighth Amendment. (Doc. # 3 at
6  5.)

7  Specifically, Plaintiff asserts that he went to the medical office on September 27, 2011,
8  to complain of a problem with anal leakage, and was told by defendant Lamb that his problem
9  was mental, and was coerced into taking Abilify with the threat that he would be placed in
10  mental health segregation if he refused. (Doc. # 4 at 3-4.) Plaintiff alleges that on September
11  29, 2011, he appeared to be suffering from an allergic reaction to Abilify, and asked to be taken
12  off the medication, but his request was denied. (*Id.* at 4.) He further alleges that his symptoms
13  of high blood pressure, chest pain and breathing symptoms were treated, but his symptoms of
14  swallowing, dizziness, depression, and concentration were ignored. (*Id.*) He contends that
15  prison officials made him continue taking Abilify despite the drug's warnings that users should
16  seek help if they suffer from a breathing problem when taking the drug. (*Id.*)

17  Plaintiff alleges that defendant Snyder, Director of Nursing, responded to his emergency
18  grievance, and failed to have Plaintiff immediately seen by a doctor. (Doc. # 4 at 8-9.) He
19  alleges that defendant Peery, Director of Nursing at NNCC, failed to properly supervise, train
20  and control nurses employed at NNCC, resulting in a denial of adequate medical care to
21  Plaintiff. (*Id.* at 9.)

22  Plaintiff goes on to allege that defendant Ownsby, a psychologist employed at NNCC,
23  saw Plaintiff on October 4, 2011. (Doc. # 4 at 10.)  Plaintiff told defendant Ownsby of his
24  symptoms from taking Abilify, but defendant Ownsby told Plaintiff to continue taking the
25  medication or he would be housed in mental health segregation. (*Id.*) Finally, Plaintiff alleges
26  that he saw defendant Mar on October 5, 2011, and told him of his symptoms from taking
27  Abilify. (*Id.* at 11.) Plaintiff claims that defendant Mar treated Plaintiff's chest pain, high blood
28

2

pressure, and shoulder pain, but ignored his symptoms of difficulty breathing and swallowing. (*Id*.) Defendant Mar also told Plaintiff to continue taking Abilify. (*Id*. at 12.)

On October 21, 2011, Plaintiff filed the instant motion seeking injunctive relief in the form of an order precluding Defendants from making Plaintiff to take Abilify and threatening to place him in mental health segregation if he refuses. (Doc. # 5.)

On November 17, 2011, the court set a hearing on Plaintiff's request for injunctive relief for November 29, 2011. (*See* Doc. # 14.) On November 22, 2011, Plaintiff filed a motion requesting an extension of time to file his reply in support of his request for a temporary restraining order or preliminary injunction. (Doc. # 15.) He also filed a motion seeking early discovery on the same date. (Doc. # 16.)

On November 23, 2011, the court issued a minute order noting the representations in Defendants' opposition to the request for injunctive relief that Plaintiff was not being forced to take anti-psychotic medication. (Doc. # 17.) In view of these representations, as well as Plaintiff's request for an extension of time, the court determined that any urgency associated with the request for injunctive relief was moot and vacated the hearing. (*Id*.)

The court set a hearing on Plaintiff's motion seeking early discovery for December 19, 2011. (*Id*.) At that hearing, Plaintiff represented to the court that he was not taking Abilify, and had not taken it since October 25, 2011. (*See* Doc. # 23.) Defense counsel made a representation at the hearing that prison medical staff may come upon a factual scenario where it may be necessary to involuntarily medicate Plaintiff. (*Id*.) In response to the court's concerns regarding this scenario, defense counsel caused to be placed in Plaintiff's medical file a notice that if it becomes necessary for Plaintiff to be treated by involuntary medication, the Deputy Attorney General assigned to this case is to be notified, so he in turn can notify the court and hold a status conference prior to the execution of involuntary medication procedures. (*See* Doc. # 24, Doc. # 24-1.)

///

///

3

## II.  LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high…This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or

4

"serious questions" test "survives…when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)…operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

5

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, it is appropriate to treat a non-ex parte motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (2d ed. 2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

### III. DISCUSSION

**1. Likelihood of success on the merits**

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

**a. Eighth Amendment standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d

6

1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion regarding the best course of medical treatment does not amount to deliberate indifference); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must

show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

### b. Analysis

Plaintiff has not demonstrated a likelihood of success on the merits. Rather, after reviewing the evidence before the court, it appears that Plaintiff is unlikely to succeed on the merits and that his request for injunctive relief is moot.

According to the medical records produced by Defendants in support of their opposition to Plaintiff's motion, Plaintiff signed a release of liability for refusal of medical treatment after refusing Abilify on October 25, 2011. (Doc. # 11-1 (Ex. B) at 2.) That Plaintiff has not taken Abilify since October 25, 2011, is confirmed in his continuing medication records. (Doc. # 11-1- Doc. # 11-5 (Ex. C), *see* refusal from October 25, 2011 on at Doc. # 11-5 at 22-26.)

Moreover, Plaintiff's medical records indicate that he did not take Abilify forcibly. Plaintiff signed a consent form to take psychotropic medication, including Abilify, on January 31, 2008. (Doc. # 11-5 (Ex. F) at 28.) This comports with NDOC's regulations, which require a consent form to be completed before the administration of psychotropic medication. (*See* Medical Directive 305.10 at Doc. # 9-1 at 17-18.)[2] Plaintiff's medical records indicate that he took Abilify voluntarily during the months of January and March through May of 2009, January through August of 2010, October 2010 through January 2011, and March 2011 through most of September 2011. (Doc. # 9-1 to Doc. # 9-5 (Ex. C).)

---

[2] Medical Directive 305 provides in pertinent part: "Psychotropic Medication form, DOC 2596 must be completed and presented for the inmate's signature. Psychotropic medication shall be given only after the inmate has given informed consent, except as provided under procedures for involuntary medication as described below." (Doc. # 9-1 at 17.) "Consent signed by the inmate must be obtained for each prescribed psychotropic medication. In the event the inmate refuses to sign the consent, a Release of Liability form, DOC 2523 must be signed. An inmate who has not had his right to refuse psychotropic medications denied may withdraw consent at any time by stating his intention to medical staff and signing a Release of Liability form. Inmates who refuse medication will be scheduled to see the psychiatrist/practitioner at the earliest opportunity for further assessment." (Doc. # 9-1 at 18.)

8

When Plaintiff refused to take Abilify on October 25, 2011, he signed the release of liability form. (Doc. # 11-1 (Ex. B) at 2.) Plaintiff also agreed to a voluntary transfer to the Mental Health Unit on October 25, 2011. (Doc. # 11-5 (Ex. H) at 30.) His admission to the Mental Health Unit was authorized by a physician at NNCC. (Doc. # 11-5 (Ex. J) at 32.) If Plaintiff chooses to revoke his consent to placement in the Mental Health Unit, his housing status will be reevaluated. (*See* Doc. # 9-1 (Ex. I) at 36-38.)

While Plaintiff now claims that he was forced to take Abilify until February 2012 (Pl.'s Reply (Doc. # 36)), this is belied by the medical records as well as Plaintiff's representation to the court on December 19, 2011, that Plaintiff was not taking Abilify and had not taken it since October 25, 2011. (*See* Doc. # 23.)

The court agrees with Defendants that at most, Plaintiff has demonstrated a difference of opinion with respect to the course of treatment chosen by his medical care providers. Plaintiff believes Abilify is causing him various ailments, while his doctors disagree. In any event, as of the present, Plaintiff is not being forced to take Abilify. Therefore, Plaintiff has not demonstrated deliberate indifference to a serious medical need in order to show he is likely to succeed on the merits. Moreover, his request for an order that Defendants be precluded from making him taking Abilify is moot.

In sum, the court finds that Plaintiff has not established a likelihood of success on the merits; a prerequisite to injunctive relief.

**2. Irreparable Injury**

Plaintiff must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

The medical records before the court establish that Plaintiff has refused to take Abilify, and is no longer taking it at the present time. Accordingly, he has not established that he will suffer irreparable harm in the absence of injunctive relief.

It is important to note that Plaintiff was taking Abilify voluntarily from 2009 through

September 2011. (*See* Doc. # 11-1 to Doc. # 11-5 (Ex. C).) Moreover, during the time period of 2009 through the majority of September 2011, Plaintiff did not submit a single kite with complaints of any injury as a result of taking Abilify. (*See* Doc. # 10-1, Doc. # 10-2 at 1-5 (Ex. K)). Actually, Plaintiff's first reference to a complaint about Abilify is in a kite dated September 29, 2011. (Doc. # 10-2 (Ex. K) at 5.) Nor do Plaintiff's medical progress notes from January 1, 2009 through October 25, 2011, reference complaints of injuries or illness due to taking Abilify. (Doc. # 10-2 to Doc. # 10-4 (Ex. L).) In fact, Defendants point out several progress note entries that reference Plaintiff taking Abilify and indicate Plaintiff was not experiencing pain or discomfort. (*See* Doc. # 9 at 8.)

Additionally, a notice has been placed in Plaintiff's medical file, effective December 19, 2011, stating that if it ever becomes necessary for Plaintiff to be involuntarily medicated, the court has ordered that the Deputy Attorney General on this case be notified so that a status conference can be held with the court prior to the execution of any involuntary medication order. (*See* Doc. # 24, Doc. # 24-1.) This appears to obviate the risk of any asserted future irreparable harm.

Plaintiff has failed to meet his burden of establishing the likelihood of irreparable injury.

**3. Balance of hardships**

A party seeking injunctive relief "must establish...that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.

Plaintiff fails to establish that the balance of hardships falls in his favor. Absent a showing sufficient to find harm to Plaintiff, there is nothing to tip the balance of equities in Plaintiff's favor. The court finds Plaintiff has not met his burden as to this prerequisite to injunctive relief.

**4. Public interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Nor has Plaintiff demonstrated that injunctive relief would be in the public's interest. Plaintiff alleged that he was being forcibly medicated with a anti-psychotic medication that caused him harm, but these allegations are belied by the medical records. Therefore, the court cannot find that injunctive relief would be in the public's interest.

**5. Conclusion**

The prerequisites for injunctive relief not having been met, Plaintiff's request for a temporary restraining order and preliminary injunction should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order denying Plaintiff's request for a temporary restraining order or preliminary injunction (Doc. # 5).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: April 11, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE