UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WILLIAM BELL,

                Plaintiff,

    vs.

JOHN PEERY, *et al.*,

                Defendant(s)

3:11-cv-00745-RCJ-WGC

**AMENDED ORDER**

Before the court is Defendants' April 23, 2012 Motion for Summary Judgment (Doc. # 39). Also before the court are various other motions and documents (characterized herein as "collateral issues") which have a bearing on how Plaintiff will be able to respond to Defendants' motion for summary judgment. This Order addresses the resolution of the collateral issues, but not the motion for summary judgment. At present, disposition of Defendants' motion for summary judgment has been informally stayed because of the collateral issues which have arisen herein. The collateral issues to be resolved by this Order are:

A. Whether the court should grant Plaintiff a general appointment of counsel (Docs. # 54, # 55);

B. Whether the court should grant Plaintiff a "limited" appointment of counsel for (Doc. # 54);

C. The authorized extent of Plaintiff's review of his medical and mental health records (Doc. # 54); and,

D. The identify of the person who will be authorized to assist Plaintiff with respect to his medical records review. (Docs. # 48, # 54.)

1    This Order will also require Plaintiff to respond to the "exhaustion" component of Defendants'

2    motion for summary judgment (Doc. # 39 at 16-18). *See infra* at p. 20.

3    ## I. BACKGROUND

4    At all relevant times, Plaintiff William Bell was in the custody of Nevada Department of

5    Corrections (NDOC), housed at Northern Nevada Correctional Center (NNCC). (Pl's Compl. (Doc.

6    # 4.) Plaintiff, a *pro se* inmate, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are

7    Keith Ownsby, Janet Lamb, David Mar, John Peery and Sandra Snider. (*Id.* at 1-3.)

8    On screening, the court determined that Plaintiff's Complaint (Doc. # 4) states a colorable

9    claim for deliberate indifference to a serious medical need under the Eighth Amendment in connection

10   with his allegation that he was forced to take the antipsychotic medication Abilify. (Screening Order

11   (Doc. # 3).) Defendants have moved for summary judgment, primarily on the grounds Defendants

12   were not deliberately indifferent to his medical needs, even assuming such needs rose to the level of

13   being "serious." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Williams v. Vincent*,

14   508 F.2d 541, 543-544 (2nd Cir. 1974)). (Doc. # 39 at 11-12.)[1]

15   Plaintiff initially requested a 45-day extension of time to respond to Defendants' motion for

16   summary judgment on the grounds that because he is illiterate, he must rely on the assistance of fellow

17   inmates to prepare his response. (Doc. # 44.) The court granted Plaintiff's motion and Plaintiff was

18   provided until July 2, 2012, to file his response. (Doc. # 45.)

19   Plaintiff did not and has not filed a response to Defendants' motion for summary judgment.

20   Instead, on June 13, 2012, Plaintiff filed a "Request for a Suspension of Proceedings." (Doc. # 46.)

21   Incorporated in the Plaintiff's motion to suspend proceedings was a component that the court

22   interpreted as being a motion to appoint counsel. (*Id.*) In an order dated August 30, 2012, the court

23   denied Plaintiff's motion for appointed counsel based on Plaintiff's ability to articulate his claims

24   (albeit with the assistance of another inmate). (Doc. # 52 at 6-7.) More importantly, the court found

25

26   [1] In addition to the medical care issue, Defendants' motion (Doc. # 39) asserts three other grounds on
     which Defendants contend summary judgment should be entered on their behalf: the Eleventh Amendment bars
27   Plaintiff's § 1983 damage claims against Defendants in their official capacities, the Defendants are entitled to
     qualified immunity, and Plaintiff has not properly exhausted his administrative remedies. As noted above, the
28   court is requiring Plaintiff to respond to the Defendants' exhaustion argument.

1   Plaintiff had not established a likelihood of success on the merits of his Eighth Amendment claim.

2   (*Id*.) ( citing Docs. # 37, # 51.) In that regard, the court's Order noted that a determination had already

3   been made in this case when evaluating Plaintiff's motion for a temporary restraining

4   order/preliminary injunction (Doc. # 5) that "Plaintiff has not demonstrated a likelihood of success on

5   the merits." (Doc. # 37, Report and Recommendation, at 8.)

6          These matters are more thoroughly discussed in this Court's Report and Recommendation of

7   April 11, 2012.   (Doc. # 37.)   Without reiterating everything contained in the Report and

8   Recommendation, the primary issue presented by plaintiff's motion for injunctive relief was whether

9   Plaintiff was being "forced" by NDOC officials to take the antipsychotic drug Abilify. (Doc. # 4 at

10  3-4.)  Plaintiff contended he was placed on the anti-psychotic drug Abilify by Defendants.  (*Id*.)

11  Plaintiff alleged that on September 27, 2011, he went to the NDOC medical office and was "coerced

12  into taking Abilify with the threat he would be placed in mental health segregation if he refused * * *

13  He contend[ed] that prison officials made him continue taking Abilify . . . ." (*Id*.)

14         Because of Plaintiff's assertion he was being forced to take an antipsychotic medication against

15  his will, the court scheduled an expedited hearing on Plaintiff's motion.[2]  At the hearing conducted on

16  December 19, 2011, however, the Plaintiff advised the court "he is not now taking Abilify, does not

17  wish to take Abilify, and to his knowledge, has not taken Abilify since October 25, 2011." (*Id*. at 1.)

18         Also, Deputy Attorney General Nathan Hastings, Defendants' counsel, represented Plaintiff

19  had not been "forced" to take Abilify and would not be required to take the medication unless the court

20  were notified in advance. (Doc. # 37 at 3.)

21         Specifically, Defendants in their opposition represented that:

22         As of October 25, 2011, Plaintiff has refused to take Abilify.  See Release of Liability
           for Refusal of Medical Treatment dated 10-25-11, DOP 2523, attached as Exhibit B to
23         this Opposition. Plaintiff's relevant Continuing Medication Records (Med Sheets) also
           show that Plaintiff has not taken Abilify since October 25, 2011. See Continuing
24         Medication Records for October and November 2011, DOC 2545/DOP2564, attached
           as Exhibit C, at C 130, 133. As Plaintiff is not taking Abilify, and has not taken it
25         since October 25, 2011 at the latest, any request for an order to stop treatment with
           Abilify is moot.
26
           Plaintiff's request is also moot because he has never been forced to take Abilify. The
27

28  _____
           [2] The history of the scheduling of this expedited hearing is discussed in greater detail *infra* at pp. 11-13.

                                                          3

1   procedure and protocol governing an inmate's consent (and/or refusal thereof) to take
    psychotrophic medications is found in Medical Directive (MD) 305, attached as
2   Exhibit D to this opposition; and in Administrative Regulation (AR) 643, attached as
    Exhibit E to this opposition. * * * In accordance with this procedure, Plaintiff's DOC
3   2596 consent and agreement to treatment with Abilify was obtained on January 31,
    2008. See Consent for psychotrophic Medication, DOC 2596, attached as Exhibit F
4   to this opposition. In fact, Plaintiff voluntarily took Abilify daily during at least the
    months of January and March through May, 2009; January through August, 2010,
5   October, 2010 through January, 2011; and March, 2011 through most of September,
    2011. Exhibit C, Med sheets.  This constituted at least 660 voluntary instances of
6   Plaintiff taking Abilify after January 2009.

7   In accordance with MD 305, medical staff also completed Plaintiff's DOP 2523 form
    (Exhibit B) on October 25, 2011 when he decided to revoke his consent to treatment
8   with Abilify. Plaintiff knew that his treatment with Abilify was voluntary, and that he
    could refuse to take the drug.  He had previously refused to take Abilify on
9   September 27 and 28, 2011. Exhibit C, at C 127.

10  (Doc. # 9 at 3-4) ( footnotes, citations and exhibits omitted.)

11      Thereafter, in a Minute Order issued on December 27, 2011, because of Plaintiff's earlier

12  statements he was not being forcibly medicated, and based on Defendants' representations the court

13  would be advised before any such procedure were undertaken, the court opined "it likely appears the

14  basis asserted for the temporary restraining order/preliminary injunction has resolved . . . ." (Doc.

15  # 29.)  As discussed above, the request for injunctive relief was considered moot.  The complete

16  grounds expressed by this court for recommending a denial of Plaintiff's motion for temporary

17  restraining order/preliminary injunction are set forth in Doc. # 37 at pp. 8-11.  Chief Judge Jones

18  adopted the Report and Recommendation and denied Plaintiff's motion for injunctive relief.  (Doc.

19  # 51.)

20      Also relevant to the analysis of the collateral issues the court is undertaking herein was

21  Plaintiff's "Motion to Conduct Early Discovery" filed on November 22, 2011, wherein he sought to

22  undertake "immediate discovery." (Doc. # 16.)  Plaintiff wanted to conduct discovery on subjects he

23  contended were germane to his request for injunctive relief, mainly securing medication records,

24  physicians' orders and Plaintiff's mental health evaluations.  (Doc. # 16 at 2.)  He also requested

25  assistance of inmate counsel in doing so.  Plaintiff's requests were addressed but not decided at the

26  hearing on December 19, 2011.  (Doc. # 23.)  As mentioned above, the court opined that Plaintiff's

27  representations he had not been and was not being forced to take Abilify likely rendered moot the

28  subject matter of Plaintiff's motion for a temporary restraining order/preliminary injunction, and thus

1   might also render Plaintiff's motion for early discovery moot as well. The court, however, wanted to

2   await verification from Defendants' counsel that NDOC officials would not force Plaintiff to take

3   Abilify (without meaning to suggest that NDOC officials had "forced" Plaintiff to take medication).

4   When the court received such assurances from Defendants' counsel (see Docs. # 23 and # 24), the

5   court subsequently found the "basis for Plaintiff's motion for early discovery is moot." (Doc. # 29

6   at 1.)

7   The court also noted in its order of December 27, 2011 (id), that a Scheduling Order had

8   already been issued on December 23, 2011, which set a discovery deadline of April 5, 2012 (Doc.

9   # 27). This scheduling order thereby enabled Plaintiff to undertake whatever discovery he deemed

10   necessary, which would presumably include those subjects addressed in his motion for early

11   discovery.[3]   For these reasons, Plaintiff's motion for early discovery was not only moot but

12   unnecessary.

13   Another issue now before the court arises from the Defendants' contention that because of the

14   sensitive information in Plaintiff's mental health records, Plaintiff should not be afforded complete

15   access to all of his records, particularly his mental health records. At the December 19, 2011 hearing,

16   the court expressed concern about Defendants' proposed restrictions on Plaintiff's access to his records

17   in this matter. The court discussed the instant situation, namely whether Plaintiff was or was not

18   forced to take an antipsychotic medication. The court suggested Plaintiff could be prejudiced by a

19   denial of access to all medical records in that he may not be able to adequately articulate an opposition

20   to Defendants' motion for summary judgment without the opportunity to access to his medical and

21   mental health records.[4]

22   At the December 19, 2011 hearing, the court reviewed in general terms the standard parameters

23   of inmate assistance as authorized by NDOC. According to NDOC policy, inmates are not allowed

24   access to fellow inmate's medical records. (Doc. # 23 at 2.) However, the court believes it did not go

25

26   [3] The court's understanding is that Plaintiff had undertaken no discovery herein.

27   [4] See Order (Doc. # 52 at 2-3), which primarily addressed Plaintiff's motion for suspension of proceedings but also discussed the Plaintiff's request for inmate assistance in opposing Defendants' Motion for Summary Judgment, complete access to his medical and mental health records, and inmate assistance in

28   reviewing his mental health records.

5

1   so far as Defendants suggest in their opposition to plaintiff's motion for suspension of proceedings that

2   "the court has already indicated that it would not order that Plaintiff's inmate assistant be allowed

3   access to Plaintiff's medical records. (Doc. #29)." (Doc. # 48 at 3.) In the context of this case, where

4   an illiterate Plaintiff is facing summary judgment based on medical and mental health records which

5   are central to the inquiry, this court initially discussed the parameters of inmate assistance, as follows:

> While the court denied Plaintiff's motion for the reasons stated above, the court briefly
> addressed Plaintiff's request for inmate assistance in connection with reviewing his
> medical records. (*See* Minutes at Doc. # 23.) Plaintiff was advised that he could utilize
> the assistance of a fellow inmate for purposes of reading and writing his pleadings in
> this case, but the inmate assistant would not be permitted to appear at hearings or act
> as Plaintiff's attorney. (*Id.*) The court confirmed that a case worker would be permitted
> to appear with Plaintiff at hearings, as one did at the December 19, 2011 hearing, for
> purposes of helping Plaintiff to understand what is occurring. (*Id.*)

11   (Doc. # 52 at 3.)

12   However, the court also queried in its order that if Plaintiff does not have the assistance of

13   counsel, how would Plaintiff be able

> to prepare a meaningful argument in opposition to Defendants' motion. In other words,
> if his inmate assistant is not allowed to take part in the medical records review, how
> will Plaintiff be able to incorporate what he gleans from his medical records review
> with the non-inmate assistant into an articulate legal argument?

16   (*Id.* at 8-9.)

17   Defendants correctly point out in their Motion for Summary Judgment (Doc. # 39) that while

18   not specifically reflected in the minutes of the December 19, 2011 hearing, the court also preliminarily

19   addressed Defendants' argument that Plaintiff not be given complete access to his mental health

20   records. (*Id.* at 3 n. 1.) The court stated it was not necessarily persuaded by Defendants' argument that

21   for institutional security and Plaintiff's own mental health that Plaintiff should <u>not</u> be able to review

22   <u>all</u> of his mental health records that are germane to this case. The court indicated it was inclined to

23   order that Plaintiff be allowed to review them if he were required to oppose a motion for summary

24   judgment in the future, particularly a motion predicated on Plaintiff's medical records. (*Id.*) The court

25   made no definitive ruling on this issue, but advised Defendants that they would need to provide

26   additional support for their argument (i.e., that Plaintiff not be given access to his mental health

27   records) upon filing a motion for summary judgment. (*Id.*) Now that Defendants have filed a motion

28

6

for summary judgment, which does in fact heavily rely on Plaintiff's medical records, that issue is squarely before the court.

The extent and manner of Plaintiff's review of his medical records is further complicated by reason of his inability to read or write, which is undisputed. (Doc. # 52 at 8.) Plaintiff earlier stated he wanted to have his inmate assistant review his medical records with him. The Defendants objected, stating inmate medical records are not to be shared with any other inmate in accordance with NDOC policy. (Docs. # 48, # 56; *see* NDOC Medical Directive 707.02, ¶14.) Defendants instead proposed that Plaintiff be allowed to review certain non-inflammatory records with the assistance of NDOC personnel. (Doc. # 48 at 3-4.)

More recently, Defendants have alternatively suggested that the court provide Plaintiff a "limited appointment of counsel," i.e., an attorney who would be appointed solely to assist Plaintiff with regard to the motion for summary judgment. (Doc. #56 at 2-3.) This suggestion is discussed in greater detail *infra at pp. 14-16*; however, the court is skeptical that this proposal presents a viable solution.

The foregoing summary provides the legal and factual framework that led to this court's Order (Doc. # 52) on August 30, 2012. Although that nine page order discusses the issues more thoroughly therein, the order generally ruled:

(1)     Defendants' motion to seal Exhibit B to Defendants' motion for summary judgment, consisting of various progress notes from Plaintiff's medical files, should be granted. (Doc. #52 at 5-6.)[5]

(2)     Plaintiff's motion for appointment of counsel, which the court found to be a component of plaintiff's motion to suspend (Doc. # 46 at 1-2), was denied. (Doc. # 52 at 6-7.) The rationale for the denial of appointment of counsel was discussed above, mainly that Plaintiff had not demonstrated his case is unduly complex or the likelihood of success with respect to his allegations of section 1983 liability. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). (*See* Doc. # 52 at 6-7.)

(3)     Whether Plaintiff can access his mental health records without restriction, whether

---

[5] The sealing of such records, however, is not germane to the disposition of the collateral issues addressed herein.

1   Plaintiff can utilize another inmate to assist him in reviewing his records and the scope of that

2   assistance, or whether Plaintiff must rely on NDOC personnel, was to be addressed by Plaintiff and

3   Defendants in separate memoranda. More specifically, the court directed the parties to submit

4   memoranda by September 21, 2012, responding to the court's concerns that:

6       The court is now confronted with the issue of whether Plaintiff's inmate assistant
        should be allowed to review Plaintiff's medical records along with him so that Plaintiff
        may prepare a response to Defendants' Motion for Summary Judgment, or whether
7       NDOC's [offer] to provide Plaintiff was a non-inmate assistant to review, take notes
        and copy designated medical records is sufficient.

9       There is no dispute regarding Plaintiff's inability to read and write. Therefore, it is clear
        that Plaintiff will need some manner of assistance in reviewing his medical records in
        order to articulate and prepare a meaningful response to Defendants' motion. The court
10      has determined that it will also afford the parties an opportunity to present further
        briefing and oral argument on this issue.

12      The court has not heard a rebuttal argument from Plaintiff with respect to NDOC's
        offer to provide him with a non-inmate assistant that will read, take notes and copy
        designated medical records. * * * Plaintiff should also address why a non-inmate
13      assistant would be insufficient.

14      Moreover, the court requests Defendants address whether providing this non-inmate
        would allow Plaintiff to prepare a meaningful argument in opposition to Defendants'
15      motion. In other words, if his inmate assistant is not allowed to take part in the medical
        records review, how will Plaintiff be able to incorporate what he gleans from his
16      medical records review with the non-inmate assistant into an articulate legal argument.
        The court is cognizant of NDOC's regulations which prevent inmates from accessing
17      the medical records of another inmate, but further requests Defendants to address
        whether blind adherence to these regulations would necessarily hamper Plaintiff's
18      ability to respond to a dispositive motion under these circumstances.

19  (Doc. # 52 at 8:25-28, 9:1-5.)

20                                  **II. DISCUSSION**

21  **A. Summary of the Parties' Positions on Collateral Issues**

22          As just stated, in Doc. # 52 at 9, the court ordered the parties to address these issues in briefs

23  to be submitted on or before September 21, 2012. The court further indicated therein that a hearing

24  would be scheduled by the court to address these issues. A hearing was thereafter set for and

25  proceeded on September 25, 2012. (Doc. # 53.)

26          Plaintiff filed his response, apparently with the assistance of inmate Phillip Ashdown, entitled

27  "Brief for Order Dated 8/28/12." (Doc. # 54.) Plaintiff's brief requested authorization for Plaintiff

28  to view "and copy as necessary . . . his mental health records unredacted, so he may view them as a

                                        8

1   whole . . . ." (Doc. # 54 at 1-2.) Plaintiff also requested, again, to have counsel appointed to represent

2   him in view of his "extraordinary circumstances and mental deficiency." (*Id.* at 1.)[6] Alternatively,

3   Plaintiff asked the court to order that he "be allowed the right of inmate assistance along with nurse

4   records supervisor (by Nurse Dave) so Mr. Bell may fairly receive the chance to obtain the necessary

5   evidence in support of his claim." (*Id.* at 3.) Accordingly, Plaintiff objected to the Defendants'

6   suggestion (Doc. #48 at 3-4) of having an NDOC employee review his medical/mental health records

7   with him. (*Id.* at 4.) Plaintiff further contended in his brief, contrary to his earlier representations to

8   the court, that "he was forced to take Abilify by the staff and prison officials of N.D.O.C. . . . ." (*Id.*

9   at 5.)

10       Plaintiff also claimed the court "wrongfully" vacated a hearing on injunctive relief and "did

11  unfairly dismiss the  T.R.O. injunctive relief" (*id.* at 6).  The court will address these (erroneous)

12  claims by Plaintiff momentarily. But first the court will summarize Defendants' response to the court's

13  order regarding briefing on these issues.

14       The "Defendants' Response to the court's Order of August 30, 2012 (Doc. # 52); or in the

15  Alternative, Request for Additional Time for Briefing," (Doc. # 56), astutely noted that "this case

16  presents the highly unique circumstance of an inmate plaintiff who has sensitive mental health issues

17  (documented in sensitive records) **and** who is illiterate." (*Id.* at 1) (Emphasis in original.) Defendants

18  recognize that the court "rightly seeks the method by which Plaintiff can meaningfully respond" to

19  Defendants' motion for summary judgment. (*Id.* at 1-2.)

20       The Defendants also recognized the quandary the court identified herein, i.e., an illiterate

21  inmate who needs access to his medical records in order to oppose Defendants' motion for summary

22  judgment, which in large measure is predicated on Plaintiff's medical records.  Defendants' initial

23  proposal, as noted above, was to have an NDOC official review Plaintiff's medical records with him

24  (or at least those records Defendants submit Plaintiff should be allowed to see). (Doc. # 48 at 3-4.)

25  Defendants suggested Plaintiff could tab those records he selected for later utilization in his opposition

26  to Defendants' motion.  But Defendants do not describe how Plaintiff will be able to thereafter

27  _____

28      [6] Plaintiff also filed a separate motion for appointment of counsel (Doc. # 55), the disposition of which
is discussed herein at pp. 13-14.

1    incorporate records which he may identify but which he does not have personal possession into a brief

2    he can neither read nor write.

3         Defendants object to having another inmate assist Plaintiff as he has requested. (Doc. # 56.)

4    The court is "cognizant of NDOC's regulations which prevent inmates from accessing the medical

5    records of another inmate. . . ." (Doc. # 52 at 9.) The court is also aware that NDOC regulations

6    prohibit an inmate from possessing his medical records in his cell. However, the court asked

7    Defendants to address whether "blind adherence to these regulations would necessarily hamper

8    Plaintiff's ability to respond to a dispositive motion under these circumstances." (*Id.*)

9         In response, Defendants suggest, after first asserting the court properly denied Plaintiff's

10   motion for appointment of counsel (Doc. # 56 at 2), that "a limited appointment of counsel may be the

11   most efficient and appropriate way to ensure Plaintiff's ability to respond to Defendants' dispositive

12   motion in this case." (*Id.*) (Emphasis added.) Defendants apparently contemplate that this attorney's

13   role would be limited to reviewing Defendants' motion, examining Plaintiff's medical records and

14   preparing an opposition to Defendants' motion for summary judgment. Although Defendants do not

15   address it, presumably this counsel would also have to remain in his or her "limited representation

16   capacity" to either object, or respond to any objections, which might be filed with regard to this court's

17   Report and Recommendation on Defendants' motion for summary judgment, and conceivably any

18   appeal on the District Judge's ultimate disposition of the motion. Defendants cite no authority

19   permitting a limited appointment of counsel after the court has previously concluded (with which the

20   District Judge concurred) that Plaintiff has not shown a likelihood of success herein on the merits, one

21   of the main criteria in evaluating an inmate plaintiff's request for appointed counsel.[7] (Report and

22   Recommendation (Doc. # 37); Order (Doc. # 51).)

23        Before turning to a resolution of the collateral issues, however, the court needs to correct a

24   misperception under which Plaintiff – or perhaps more accurately, Plaintiff's inmate assistant, Phillip

25   Ashdown – appears to be laboring, and that relates to how the court addressed and resolved Plaintiff's

26

27

28

---

[7] The issue of a limited appointment of counsel is discussed *infra* at section B (2) at pp. 14-16.

1  motion for temporary restraining order/preliminary injunction (Doc. # 5).[8]

2  Plaintiff's "Brief for Order" claims the court (1) wrongfully vacated the hearing for injunctive

3  relief, and (2) unfairly dismissed the "T.R.O. injunctive relief by wrongfully assuming the Plaintiff,

4  Mr. Bell, did not demonstrate a likelihood of success on the merits of his claim without the court ever

5  seeing the evidence of his mental health records . . . ." (Doc. # 54 at 6.) Plaintiff requests that "the

6  order for the dismissal of the T.R.O./Injunctive Relief be reversed . . . that was wrongfully issued by

7  the District Court." (*Id.*)

8  Plaintiff's history of the case is mistaken, and a brief historical review of Plaintiff's motion is

9  therefore appropriate. The records reflect that on October 21, 2011, Plaintiff filed a motion seeking

10 injunctive relief precluding Defendants from forcing him to take Abilify, a prescription drug which

11 is indicated for mental health treatment. (Doc. # 5.) Given the nature of Plaintiff's assertions, the court

12 set an accelerated briefing schedule and scheduled a hearing on the matter for November 28, 2011.

13 (Doc. # 14.)

14 Despite having the opportunity to have an expedited hearing, on November 22, 2011, Plaintiff

15 requested the court grant him "the additional time of forty-five (45) days to respond to the Defendants'

16 Opposition to Plaintiff's Motion for a Temporary Restraining Order. . . ." (Doc. # 15 at 1.) Plaintiff

17 claimed he needed the additional time to secure certain documents (which apparently instigated the

18 filing of Plaintiff's motion for early discovery (Doc. # 16) on the same date). Importantly, however,

19 Plaintiff did not state he needed the documents to show he was being "forced" to take Abilify. Instead,

20 Plaintiff claimed he wanted to locate documents that would show "for refusing to sign a medical

21 waiver or take the drug Abilify," he was disciplined by being confined on three occasions in a

22 segregated mental health unit." (*Id.* at 2. ) In other words, in this motion he was seemingly no longer

23 claiming he was being required to take this medication; rather, he contended his housing was allegedly

24 altered as a result of his refusal.

25 In their response to Plaintiff's motion for a temporary restraining order/preliminary injunction,

26

27 —————————————

[8] Based on the handwriting on Plaintiff's earlier submissions, it does not appear inmate assistant
28 Mr. Ashdown was working with Plaintiff until recently and, therefore, he may not be familiar with prior
proceedings.

1   Defendants represented that Plaintiff was not being forced to take any antipsychotic medications. (Doc.

2   # 9.) Despite Plaintiff's argument in his brief that no medical records were available to the court when

3   the court preliminarily considered Plaintiff's motion for injunctive relief, Defendants' opposition to

4   Plaintiff's motion for temporary restraining order included some 91 pages of medical records, kites,

5   pre-system records – and, notably, releases of liability for "Refusal of Medical Treatment" for failing

6   to take Abilify as recommended.   (Doc. # 9 at 3-4; Exhibits (A)-(I).) As a result of these

7   representations and preliminary review of those records Defendants submitted, and in light of

8   Plaintiff's request for an extension of time, the court determined that the initial urgency associated with

9   Plaintiff's request for injunctive relief no longer existed. (See Doc. # 17.)

10   The court granted Plaintiff's motion for enlargement of time to reply to Defendants' response

11   to Plaintiff's motion for injunctive relief. (Doc. #17.) Because of Plaintiff's motion, and the reasons

12   outlined above, the court vacated the expedited November 28, 2011 hearing but simultaneously

13   rescheduled the hearing on Plaintiff's motion for injunctive relief and motion for early discovery for

14   December 19, 2011. (Doc. # 21.) As reviewed above, Plaintiff contended his being able to undertake

15   "early discovery" was necessary for him to establish the basis for his motion for temporary restraining

16   order. (Doc. # 16.). The court deemed it appropriate to address Plaintiff's two motions at the same

17   time.

18   At the December 19, 2011 hearing, Plaintiff informed the court he was not taking Abilify and

19   had not taken it since October 25, 2011. (See Minutes at Doc. # 23.) Similarly, defense counsel

20   reiterated that Plaintiff was not being forced to take Abilify by NDOC. (Id.) Out of an abundance of

21   caution, defense counsel agreed to place a notice in Plaintiff's medical file that if it also became

22   necessary for Plaintiff to be treated involuntarily, the deputy attorney general assigned to this case

23   should be notified in advance so that he could in turn notify the court and the court could hold a status

24   conference. (See Docs. # 23, # 24, # 24-1.)[9] As a result of this filing, the court thereupon determined

25   that the basis for Plaintiff's motion for early discovery was moot and denied the motion. (Minute

26

27   _____

28   [9] Again, Defendants' position is Plaintiff has never been forced to take Abilify against his will. When Plaintiff declined or refused to take the drug (against his doctors' recommendations), Defendants acquiesced in his refusal but required Plaintiff to sign a release noting he refused the medication. (Docs. # 9, # 23, # 24.)

12

1    Order, 12/27/12, Doc. # 29 at 1.)[10]  To date, the court has not been notified by Defendants of any

2    attempt to forcibly medicate Plaintiff.

3         Therefore, the court did not "wrongfully and unlawfully vacate the hearing for injunctive relief"

4    as Plaintiff asserts.  (Doc. # 54 at 6.)  Instead, the court accommodated Plaintiff's request for an

5    extension of time to reply to Defendants' response to his motion for injunctive relief, conducted a

6    prompt hearing on Plaintiff's motions and entered several orders with respect to Plaintiff's requested

7    relief.

8         With those preliminary matters summarized and described, the court will now turn to an

9    analysis of the collateral issues presented to the court secondary to Defendants' motion for summary

10   judgment.

11   **B. Analysis of Collateral Issues**

12        **1. Whether the Court Should Grant a General Appointment of Counsel**

13           **(Docs. # 54, # 55)**

14        Plaintiff's "Brief for Order" again included another request for appointment of counsel. (Doc.

15   # 54 at 4-5.)[11]  However, other than referring to "extraordinary circumstances," which Plaintiff stated

16   arises from his illiteracy and inability to "comprehend the complexities of law or medical procedures"

17   (an infirmity which affects almost every section 1983 *pro se* inmate litigant), he does not explain how

18   this case is unduly complex or why he is likely to prevail herein.  These two components are the

19   criteria a court must necessarily resolve when deciding whether to appoint counsel.

20        Plaintiff also filed a separate motion for appointment of counsel.  (Doc. # 55.)  His motion

21   asserts a litany of shortcomings that affect almost every inmate's section 1983 lawsuit, i.e., Plaintiff

22   cannot afford counsel, Plaintiff's imprisonment limits his ability to litigate, Plaintiff is of limited

23   education "of medical law," Plaintiff is denied library access, that a trial will involve conflicting

24   testimony, etc.  Plaintiff's motion also fails to address the applicable criteria governing appointment

25

26        [10] As previously stated, a scheduling order was entered herein on December 23, 2011 (Doc. # 27), which
27   also rendered the motion for early discovery moot.

28        [11] On August 30, 2012, the court denied Plaintiff's earlier request for appointment of counsel which was
     a component of his request (Doc. # 46) to "suspend" proceedings.  (Doc. # 52.)

1  of counsel.[12]

2       A litigant in a civil rights action does not have a Sixth Amendment right to appointed counsel.

3  *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In very limited circumstances, federal

4  courts are empowered to request an attorney to represent an indigent civil litigant. The circumstances

5  in which a court will grant such a request, however, are exceedingly rare, and the court will make the

6  request under only extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795 F.2d 796,

7  799-800 (9th Cir. 1986); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

8       A finding of such exceptional or extraordinary circumstances requires that the court evaluate

9  both the likelihood of Plaintiff's success on the merits and the *pro se* litigant's ability to articulate his

10  claims in light of the complexity of the legal issues involved. Neither factor is controlling; both must

11  be viewed together in making the finding. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991),

12  *citing Wilborn, supra*, 789 F.2d at 1331. However, the district court exercises discretion in making

13  this finding.

14       The underlying case presented by Plaintiff, although having certain unique aspects, is not

15  necessarily complicated. Plaintiff's Complaint alleges that he was forced to take a medication against

16  his will. Thus, the Plaintiff's claim of deliberate indifference to a serious medical need is neither

17  complex nor complicated. Similarly, as discussed above, Plaintiff has failed to convince the court of

18  the likelihood of success on the merits of his claims or the complexity of the legal issues involved.

19       Therefore, Plaintiff's request in his "Brief for Order" for appointment of counsel (Doc. # 54)

20  and his Motion for Appointment of Counsel (Doc. # 55) are **DENIED.**

21  **2. Whether the Court Should Grant a "Limited" Appointment of Counsel (Doc. # 56)**

22       Defendants, although having previously opposed Plaintiff's request for general appointment

23  of counsel (Doc. #48 at 2-3), propose the court grant a "limited" appointment of counsel:

24

25       [12] Plaintiff's motion appears to be a "form" request for counsel onto which Plaintiff's inmate assistant
has inserted (in different handwriting than that on the form) Plaintiff's name and certain other embellishments,

26  including an allegation of denial of "proper access to the courts" (Doc. #55 at 1) and "denial of library access,"
neither of which issues are the subject of Plaintiff's complaint and thus beyond the purview of this action. *cf.*,

27  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th
Cir. 2010); *Colvin v. Caruso*, 605 F.2d 282, 299-300 (6th Cir. 2010); *Omega World Travel v. Trans World*

28  *Airlines*, 111 F3d 14, 16 (4th Cir. 1997) (a plaintiff seeking injunctive relief must show a relationship between
the subject of a motion for injunctive relief and the conduct asserted in the complaint.)

1    Defendants submit that a limited appointment of counsel may be the most efficient and
2    appropriate way to ensure Plaintiff's ability to respond to Defendants' dispositive
     motion in this case. Such need not and indeed should not be a comprehensive
3    appointment to represent Plaintiff in this action. This case has already progressed
     through the court's scheduling order and there is a pending dispositive motion before
4    the court. The appointment suggested by Defendants would be limited to assisting
     Plaintiff by reviewing his medical and mental health records on his behalf and then
5    assisting in synthesizing/drafting so as to 'allow Plaintiff to prepare a meaningful
     argument in opposition ....' (Doc. #52 at 8). This limited appointment would remain
6    in compliance with NDOC regulations and account for the issues the court has outlined
     (Doc. #52) without forcing the court to rule on the novel issues addressed by the
7    underlying circumstances.

8    (Doc. # 56 at 2:14-24.)

9         The problems with Defendants' suggestion are multiple. First, the court has already made a

10   determination, in accordance with Defendants' position (Doc. #48 at 2-3), that Plaintiff has not

11   satisfied the controlling criteria for appointment of counsel (*see* discussion above and this court's

12   Order of August 30, 2012 ( Doc. # 52 at 6-7). If Plaintiff has not demonstrated a likelihood of success,

13   whether the court can proceed to appoint counsel (either "general" or "special") at all is problematic.

14        Defendants cite no authority for the proposition that even a limited appointment of counsel is

15   appropriate, particularly where the court has found against Plaintiff on the *Terrell* factors. The court's

16   research, however, has located one case where a court has previously denied a general appointment

17   of counsel but nonetheless approved a limited appointment of counsel. *Jefferson v. Perez*, 2011 WL

18   4760796 (E.D. Ca. 2011).

19        The court in *Jefferson* appointed counsel from a "pro bono pool" to assist the plaintiff for the

20   limited purpose of "clarify[ing] his intent with respect to the requests for admissions . . ." which the

21   plaintiff had admitted. (*Id.* at 2.) The court found plaintiff should first receive "aid of counsel" with

22   respect to plaintiff's "'deemed' admissions." (*Id.*) Thus, it appears the scope of counsel's anticipated

23   assistance in *Jefferson* was much narrower than it would be herein and any such appointment would

24   indeed be very limited. (*Id.* at 2-3.)

25        Second, unlike the *Jefferson* court's available source of pro bono counsel, there is unfortunately

26   no pool of attorneys in the District of Nevada to whom this court can turn to appoint counsel in a

27   *pro se* inmate section 1983 lawsuit. The court does not have the power "to make coercive

28   appointments of counsel." *Mallard v. U. S. Dist. Court.*, 490 U.S. 296, 310 (1989). Thus, the court

15

1   can appoint counsel only under exceptional circumstances. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th

2   Cir. 2009) *cert. denied* 130 S.Ct. 1282 (2010). In the *Jefferson* case, the court was able to select an

3   attorney "from the court's pro bono attorney panel." In the District of Nevada, there is unfortunately

4   no "pro bono attorney panel" from which this court could effect even a limited appointment of counsel.

5         Accordingly, even if a "limited" appointment was authorized by law, to do so the court

6   presumably would be placed in the position of having to call various attorneys, asking the attorney to

7   assume representation in a case where the court has already determined the plaintiff is not likely to

8   prevail. The attorney, in fairness, should further be advised that the appointment, for which there

9   would be no compensation, would necessitate review of hundreds of pages of medical and mental

10  health records. The representation would require consultation with an incarcerated inmate at NNCC.

11  The attorney's obligations would also likely include filing objections, or responses to objections, to

12  the report and recommendation the court will eventually enter. Conceivably, counsel might even be

13  obligated to prosecute an appeal to the Ninth Circuit. And at the end of the day, the attorney – if he

14  or she loses the case – would possibly be a defendant in a malpractice action. This is pushing the

15  envelope on asking an attorney to undertake pro bono services.

16        Inasmuch as the court has no pool of volunteer attorneys in Nevada who are available for and

17  willing to accept such appointments, if the court contacted an attorney directly to request the attorney

18  undertake this "limited appointment," the court may find itself "indebted" to that attorney. The court

19  could also conceivably be placed in an awkward position if and when the appointed attorney later were

20  to appear before this court, particularly if the matter involving that attorney presented a "close

21  question."

22        Accordingly, it does not appear that a limited appointment of counsel presents a viable

23  alternative. Therefore, Defendants suggestion of a Limited Appointment of Counsel (Doc. # 56) is

24  **DENIED.**

25      **3. The Authorized Extent of Plaintiff's Review of his Medical and Mental Health**

26          **Records (Doc. # 54)**

27        To be able to satisfactorily oppose Defendants' motion for summary judgment, Plaintiff has

28  requested access to <u>all</u> of his medical and mental health records with no restrictions on what records

16

1    – mental health or otherwise – which he may review.  Plaintiff states he needs "his mental health

2    records viewable as a whole and unredacted for evidentiary purposes. * * * Mr. Bell must be afforded

3    a fair and unbiased opportunity to glean <u>true</u> and <u>correct</u> and unbiased facts from his records." (Doc.

4    # 54 at 3-4) (emphasis in the original.)

5         Defendants' motion for summary judgment, at n.1, states that pursuant to "the Declaration and

6    Report of Dr. John Harris, one of Plaintiff's current treating mental health professionals/psychologists

7    at the RMF . . . gives specific rationale, related to Plaintiff's individual and current condition, urging

8    the court not to order that these records be made available to Plaintiff. * * *"  The Harris Declaration

9    appears in the court docket, sealed, as Doc. 40-1.  Without disclosing the content of the declaration,

10   Dr. Harris' general opinion is that "making these records available would have these inflammatory

11   negative effects" on Plaintiff.  (Doc. # 40-1 at 5.)

12        The court appreciates and respects Dr. Harris' input and evaluation.  Were the records germane

13   to anything other than a potentially dispositive motion, the court would be inclined to follow his

14   recommendation.  In the instant matter, however, Plaintiff recognizes the records may contain adverse

15   information but is willing to receive reports which are negative about him.  He states:

16

17        Plaintiff will not be negatively affected by someone's opinion of him, medically or
          otherwise.  Mr. Bell knows his psychological conditions very well for he has dealt with
18        them extensively and <u>no information</u> written in his mental health records will affect or
          change these factors or truths. . . ."

19   (Doc. # 54 at 2) (emphasis in the original.)  Plaintiff also asserts he would not be "negatively impacted

20   by being able to view his medical/mental health records." (*Id.* at 3.)

21        Additionally, at the September 25, 2012 hearing, Plaintiff was canvassed about possibly finding

22   derogatory opinions about him or pessimistic prognoses or characterizations of a mentally unbalanced

23   person.  He agreed to accept that risk and was amenable to executing a consent or waiver to that effect.

24   (Doc. # 57.)

25        Therefore, because of the nature of Plaintiff's allegations in his complaint, and because of the

26   scope of Defendants' motion for summary judgment (which includes numerous mental health records),

27   the court will allow Plaintiff access, unrestricted, to all of his medical and mental health records.

28   However, Plaintiff would first have to execute a waiver, consent or other agreement acceptable to

1    Defendants (and NDOC) whereby Plaintiff would assume all risks attendant to his being provided

2    complete access to his records. The form and content of such a document would be in the discretion

3    of Defendants and NDOC.

4              Plaintiff's request for complete access to his records (Doc. # 54) is **GRANTED.**

5        **4. The Identity of the Person Authorized to Assist Plaintiff in His Medical Records**

6            **Review (Doc. #54)**

7              Now that the court has concluded Plaintiff should have the access to <u>all</u> of his records, the court

8    now has to ascertain the manner in which Plaintiff – who is illiterate – will be allowed to review them.

9    In that respect, since the court concluded appointment of counsel (limited or otherwise) is not

10   appropriate, the question becomes whether the court will make Plaintiff review those records with an

11   NDOC-appointed employee (as Defendants urge) or allow him to do so with the inmate assistant who

12   has been involved in Plaintiff's case (or conceivably by himself without any assistance whatsoever).

13             As discussed above, although Defendants' response (Doc. # 56) proposed this paradox could

14   supposedly be resolved by a limited appointment of counsel, the court has concluded this suggestion

15   is not a viable solution. Prior to making the limited appointment of counsel suggestion, Defendants'

16   earlier proposal was that "a non-inmate individual will be provided to read to Plaintiff the records that

17   he properly requests to inspect. * * * That individual will also assist him to take notes he wishes taken,

18   and assist Plaintiff to tag for copying, those records which he designated, which may be properly

19   copied." (Doc. # 48 at 3-4) (Footnote and references omitted.)

20             The court noted the problem with this approach in its August 30, 2012 Order, stating:

21                  Moreover, the court requests Defendants address whether providing this non-
                    inmate would allow Plaintiff to prepare a meaningful argument in opposition
22                  to Defendants' motion. In other words, if his inmate assistant is not allowed
                    to take part in the medical records review, how will Plaintiff be able to
23                  incorporate what he gleans from his medical records review with the non-
                    inmate assistant into an articulate legal argument. The court is cognizant of
24                  NDOC's regulations which prevent inmates from accessing the medical records
                    of another inmate, but further requests Defendants to address whether blind
25                  adherence to these regulations would necessarily hamper Plaintiff's ability to
                    respond to a dispositive motion under these circumstances.[13]
26

27   _____
          [13] The court also asked Defendants to address in their responsive memorandum whether Plaintiff might
28   have a "separate and independent constitutional claim if the court were to deny Plaintiff's request in this pending
     action that his inmate assistant have access to his medical records under these circumstances." (Doc. # 52 at 9.)
     Defendants' response (Doc. # 56), however, did not specifically address this subject.

                                                    18

(Doc. # 52 at 8-9.)

The court is sensitive to the security concerns of prison administration and that a court is not to unreasonably interject itself into prison operations. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). The problems attendant to the instant mater, however, may require flexibility in prison administration in order to achieve justice herein. The court does not view the NDOC-assistant suggestion as a viable solution to Plaintiff's personal inability to prepare a response to Defendants' motion for summary judgment. Even if the entire medical records were read to him, and even if Plaintiff were able to tag and copy certain of those records, being illiterate Plaintiff would probably not be able to assimilate them into a responsive argument. Similarly, if he cannot provide those records to his inmate assistant, it would be almost impossible for Mr. Ashdown (or whoever might assist Plaintiff) to prepare a cogent argument in opposition.[14]

The court notes NDOC regulations prohibit an inmate from having his medical records in his cell or even in the law library. Instead, the records are kept in the medical unit. In that regard, at the September 25, 2012 hearing the court asked Defendants' counsel how he himself could have prepared Defendants' motion for summary judgment if he did not have the medical records available for reference. The forthright response was that such would admittedly present a formidable hurdle even to him as a trained attorney. While this complexity confronts every inmate whose case involves medical records, it is magnified exponentially with an inmate who is illiterate.

Accordingly, due to the unique factors of this case, the only viable alternative the court can propose is that Plaintiff's inmate assistant also be allowed access to and review of Plaintiff's medical records to be able to assist Plaintiff in his response to Defendants' motion for summary judgment. Prior thereto, however, Plaintiff would have to execute a broad waiver and consent to allow his inmate assistant access to such records, as well as a recognition Plaintiff assumes all risks attendant to this procedure. Additionally, Plaintiff's inmate assistant would also have to execute an agreement whereby he agrees he would not disclose the content of any of Plaintiff's medical records to any other inmate, and that if he (the inmate assistant) did so, he would possibly be subject to both sanctions by the court

---

[14] There is also the problem that the NDOC assistant is a fellow employee of Defendants, which presents certain issues of conflict.

19

1   and appropriate discipline by NDOC.  The form and content of the inmate assistant's non disclosure

2   agreement would also be at the discretion of the Defendants and NDOC.

## III. EXHAUSTION ARGUMENT

4        The court notes that Defendants' motion for summary judgment also asserts as a grounds for

5   termination of Plaintiff's action that Plaintiff failed to exhaust his administrative remedies. (Doc. # 39,

6   at 16-18.)  Defendants state Plaintiff filed three informal grievances related to the Abilify issues but

7   never pursued them beyond that level.  As is well established, a plaintiff is required to completely

8   exhaust an institution's grievance prior to commencing a civil rights action on that subject. 42 U.S.C.

9   § 1997e(a); *McKinney v. Carey*, 311, F.3d 1198, 1199 (9th Cir. 2002).   In the instant matter,

10   Defendants contend Plaintiff failed to pursue his grievances through all three levels of the NDOC

11   administrative process and thus bars this Court's consideration of Plaintiff's Complaint.[15]  (Doc. # 39

12   at 16-18; Ex. F (AR 740).)

13        Therefore, while the issues discussed herein are being addressed through the appropriate

14   channels, the court will require Plaintiff to respond to Defendants' "exhaustion argument."  **Plaintiff**

15   **shall file a response to the "exhaustion" component within twenty-one (21) days of the date of**

16   **this Order, i.e., by October 24, 2012.**

## IV. CONCLUSION

18   **IT IS HEREBY ORDERED:**

19       (1)   Plaintiff's Request and Motion for Appointment of Counsel (Docs. # 54 and # 55) are

20   **DENIED;**

21       (2)   Defendants suggestion of a Limited Appointment of Counsel (Doc. # 56) is **DENIED;**

22       (3)   Plaintiff's request for complete access to his medical and mental health records (Doc. #

23   54) is **GRANTED**; and,

24       (4)   Plaintiff's request to enable his inmate assistant to review his records with Plaintiff, and

25   to utilize the records while opposing the Defendants' motion for summary judgment (Doc. # 54), is

26   **GRANTED.**

27

28       [15] It is possible a conclusion adverse to Plaintiff on the exhaustion issue may indeed render moot all of the issues addressed in the Order.

20

(5)  **Limited Stay of Order**

The court recognizes the unique nature of this Order.  Counsel for Defendants indicated Defendants would likely seek review of at least certain components of this Order by District Judge Jones, which this court understands.  Therefore, **paragraphs IV (3) and (4) of this Order are STAYED** pending the filing of appropriate objections and subsequent review thereof and decision by District Judge Jones.

DATED:  October 5, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE