**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM BELL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JOHN PEERY, *et al.*,<br><br>　　　　Defendants. | 3:11-cv-00745-RCJ-WGC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. section 636(b)(1)(B) and Rule IB 1-4 of the Local Rules of Practice.

Currently before the court is Defendants John Peery *et al.*'s Motion for Summary Judgment (Doc. # 39). Plaintiff William Bell opposed (Doc. # 64) and Defendants replied (Doc. # 66). In particular, the court will address Defendants' argument on summary judgment that Bell failed to exhaust his administrative remedies before filing this lawsuit.

**I. BACKGROUND**

Plaintiff William Bell, a *pro se* litigant in the custody of the Nevada Department of Corrections ("NDOC"), brings this action pursuant to 42 U.S.C. section 1983. (Pl.'s Compl. (Doc. # 4) at 1.) The events giving rise to this litigation occurred while Hewitt was housed at Northern Nevada Correctional Center ("NNCC"), where he presently resides. (*Id.*) Defendants are Janet Lamb, David Mar, Keith Ownsby, John Peery and Sandra Snider (collectively "Defendants," unless referred to individually or otherwise noted). (*Id.* at 1-3.)

The court previously has recounted some of the background information discussed below. (*See* Docs. # 37, # 60.) However, because Defendants' motion is potentially dispositive, the court will repeat some of that information here in describing the procedural posture of this case. In doing so, the court only will refer to the information that is relevant to the instant motion.

**A. Summary of Bell's Allegations**

Bell alleges NDOC medical personnel put him on the anti-psychotic drug Abilify. (Doc. # 4 at 3-4.) Thereafter, he complained of difficulty breathing and swallowing, high blood pressure, chest pains, headaches, dizziness, concentration and memory problems, insomnia and rectal leakage, and asked to stop taking Abilify. (*Id.* at 3-4, 6-16.) He alleges Defendants refused to take him off the medication and threatened to place him in mental health segregation if he refused to take the drug. (*Id.*) On screening, the court determined Bell states a colorable claim for deliberate indifference to a serious medical need under the Eighth Amendment. (Doc. # 3 at 5.)

Specifically, Bell asserts he went to the medical office on September 27, 2011, to complain of a problem with anal leakage. (Doc. # 4 at 3.) There, Defendant Lamb determined Bell's condition was mental, not physical, and she allegedly coerced Bell into taking Abilify with the threat that he would be placed in mental health segregation if he refused. (Doc. # 4 at 3-4.) Plaintiff alleges that on September 29, 2011, he appeared to be suffering from an allergic reaction to Abilify, and asked to be taken off the medication, but his request was denied. (*Id.* at 4.) He further alleges that his symptoms of high blood pressure, chest pain and breathing symptoms were treated, but his symptoms of swallowing, dizziness, depression, and concentration were ignored. (*Id.*) He contends that prison officials made him continue taking Abilify despite the drug's warnings that users should seek help if they suffer from a breathing problem when taking the drug. (*Id.*)

Bell alleges that Defendant Snider, Director of Nursing Services I, responded to his emergency grievance and failed to have him immediately seen by a doctor. (Doc. # 4 at 8-9.) He alleges Defendant Peery, Director of Nursing at NNCC, failed to properly supervise, train and control nurses employed at NNCC, resulting in a denial of adequate medical care to Bell. (*Id.* at 9.)

Bell further avers Defendant Ownsby, a psychologist employed at NNCC, saw Bell on October 4,

2011. (Doc. # 4 at 10.) Bell told Ownsby of his symptoms from taking Abilify, but Ownsby told Bell to continue taking the medication or he would be housed in mental health segregation. (*Id*.) Finally, Bell alleges he saw Defendant Mar on October 5, 2011, and told him of his symptoms from taking Abilify. (*Id*. at 11.) Bell claims Mar treated his chest pain, high blood pressure, and shoulder pain, but ignored his symptoms of difficulty breathing and swallowing. (*Id*.) Mar also told Bell to continue taking Abilify. (*Id*. at 12.)

**B. October 5, 2012 Order (Doc. # 60)**

This court issued an Amended Order on October 5, 2012 (Doc. # 60), which addressed several issues related to Bell's ability to prepare an adequate opposition to Defendants Motion for Summary Judgment.[1] That Order also addressed Defendants' argument on summary judgment that Bell has failed to exhaust his administrative remedies. (Doc. # 39 at 16-18.) Since failure to exhaust administrative remedies is a potentially dispositive affirmative defense, *see infra* at p. 7, this court required Bell to respond to Defendants' exhaustion argument by October 24, 2012. (Doc. # 60 at 20.) Bell filed his response (Doc. # 64) and Defendants' replied (Doc. # 66).

## II. STANDARD OF REVIEW

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id*. (quoting FED. R. CIV. P. 56(c)). Where reasonable minds

---

[1] Initially, Bell requested an extension of time to file his opposition to Defendants' Motion for Summary Judgment, and inmate assistance in preparing the opposition, on the grounds that he is illiterate. (*See* Doc. # 44.) After this request was granted (Doc. # 45), Bell requested appointment of counsel (Doc. # 46), which was denied (Doc. # 52 at 6-7). Without having filed an opposition, Bell later filed two additional motions related to his ability to prepare an opposition brief: (1) Motion for Brief Access to Mental Health Records (Doc. # 54), and (2) Motion for Appointment of Counsel (Doc. # 55). These motions, as well as Defendants' suggestion of a limited appointment of counsel (Doc. # 56), were the subject motions of the October 5, 2012 Amended Order (Doc. # 60).

3

could differ on the material facts at issue, however, summary judgment is not appropriate. *See Liberty Lobby*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Liberty Lobby*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish

4

1  that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
2  U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not
3  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute
4  be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*
5  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations
6  and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on
7  conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond
8  the assertions and allegations of the pleadings and set forth specific facts by producing competent
9  evidence that shows a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

10  At summary judgment, a court's function is not to weigh the evidence and determine the truth
11  but to determine whether there is a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 249. While the
12  evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor,"
13  if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary
14  judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

**A. The Parties' Positions**

17  Defendants argue Bell filed three informal grievances related to the Abilify issues but that he
18  never pursued them through all three levels of the NDOC's administrative process, as required by
19  Administrative Regulation ("AR") 740 and section 1997e(a) of the Prison Litigation Reform Act
20  ("PLRA"). (Doc. # 39 at 18.) These three grievances are: (1) Informal Grievance # 20062933139 dated
21  September 27, 2011 (Doc. # 39-1, Ex. I at 36); (2) Informal Grievance # 20062933143 dated
22  September 29, 2011 (*id*., Ex. K at 46); and (3) Informal Grievance # 20062934446 dated November 13,
23  2011 (*id*., Ex. J at 40). Consequently, Defendants contend summary judgment should be granted in their
24  favor and Bell's Complaint should be dismissed. (*Id*. at 18.)

25  Conversely, while Bell refers to the same three grievances Defendants refer to, he argues that he
26  received verbal and written responses to his grievances stating "resolution was complete . . . ." (Doc.
27  # 64 at 2.) In addition, Bell asserts he exhausted all available remedies as best as he could given the

5

"extraordinary circumstances" of illiteracy and mental deficiency that he faced. (*Id*. at 1-2.) He claims the grievance dated September 27, 2011, was filed on his behalf by an inmate "who was only trying to take advantage of [Bell] . . . ." (*Id*. at 3.) Bell claims this inmate helper "cheat[ed] him . . . [and] led [him] to believe that the grievance exhaustion was in fact completed and 'resolved' and that he no longer would be forced to take abilify and had therefore completed the exhaustion process." (*Id*.) (Emphasis deleted.) Ultimately, Bell argues he "d[idn't] know [the rules of exhaustion] . . . or the process involved . . ." and that an illiterate and mentally deficient inmate like himself cannot be expected "to know there are 3 separate levels of exhaustion . . ." particularly when "being misled by a worthless inmate helper . . . ." (*Id*.)

**B. Legal Standard**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Supreme Court has held that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id*. (emphasis deleted; internal quotations and citation omitted).

The District of Nevada has interpreted *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457

F.Supp.2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion.' Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id*. at 1134.

The failure to exhaust is an affirmative defense and a defendant bears the burden of raising and proving failure to exhaust. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust administrative remedies is treated as a matter in abatement, and is properly raised in an unenumerated 12(b) motion to dismiss. *Id*.; *see Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988). As such, failure to exhaust is not properly raised in a motion for summary judgment, but if it is so raised, it should be treated as a motion to dismiss. *Ritza*, 837 F.2d at 368 (citations omitted).[2] If the court ultimately finds that Plaintiff has not exhausted his nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007) (citing *Wyatt*, 315 F.3d at 1119-20); *see Ritza*, 837 F.2d at 368.

In *Ritza*, the court noted the distinction between summary judgment and dismissal for matters in abatement as it concerns the court's authority to resolve factual disputes:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement . . ., should be distinguished from a motion for summary judgment relates to the method of trial. In ruling on a motion for summary judgment the court should not resolve any material factual issue. . . . If there is such an issue it should be resolved at trial. . . . On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue . . . and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

*Ritza*, 837 F.2d at 369 (citations omitted). Therefore, the court must treat the exhaustion issue as one raised in an unenumerated 12(b) motion, and is tasked with resolving factual issues that arise.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC AR 740. (Doc. # 39-1, Ex. F.) Under

---

[2] Defendants raised the "exhaustion" argument alongside several other arguments in their Motion for Summary Judgment. (*See* Doc. # 39 at 16-18). Consequently, the court will treat Defendants' "exhaustion" argument, which is actually an affirmative defense, *see Wyatt*, 315 F.3d at 1119, as an unenumerated 12(b) motion to dismiss.

7

the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (*Id*.) "An inmate must complete all three steps of the grievance process even if his claim is being investigated." (*Id.* at 14.)

**C. Analysis**

In this case, Bell appears to concede that he did not follow the proper steps of exhaustion within the NDOC system. He claims not to have known the "rules" or "process" of exhaustion. (Doc. # 64 at 3.) Further, the record clearly shows Bell satisfied the first step of AR 740's grievance process by filing an informal grievance, but he failed to satisfy the remaining steps by not filing a first level grievance or a second level grievance. Bell presents *no* evidence showing he satisfied these steps outlined in AR 740.

Therefore, Bell's main arguments are two-fold: (1) he was led to believe his informal grievances were resolved, which excused him of the responsibility to submit first and second level grievances, and (2) even if he did not comply with the NDOC's grievance procedures, his filing of informal grievances nevertheless satisfied the PLRA's exhaustion requirement in light of the extraordinary circumstances he faced, including illiteracy, mental deficiencies and a troublesome inmate assistant.[3]

Bell cites to *Harvey v. Jordan*, 605 F.3d 681 (9th Cir. 2010) to support his first argument that he was excused from the grievance process because his grievances were "resolved." (Doc. # 64 at 29.) In *Harvey*, the court held that "[o]nce prison officials purported to grant relief *with which . . . [the inmate- plaintiff] was satisfied*, . . . [the inmate-plaintiff's] exhaustion obligation ended." *Harvey*, 605 F.3d at 685 (emphasis added). *Harvey* is distinguishable and therefore inapplicable here because Bell

---

[3] Bell appears to make an additional argument, namely that his informal grievances contained allegations of "inmate abuse," which, pursuant to AR 740, should not be addressed through the grievance process but by the Warden and the Associate Warden. (Doc. # 64 at 5-6.) Bell seemingly refers to his allegations of retaliation against Defendant Lamb in Informal Grievance # 20062934446 filed on November 13, 2011. (*See* Doc. # 39-1, Ex. J at 40-43.) There, Bell alleges Lamb and other prison officials "harassed, threatened, intimidated, and retaliated against [Bell] . . .for having filed a . . . Civil Rights Complaint in the U.S. District Court against N.N.C.C. staff employees that includes [Lamb] . . . as a defendant." (*Id*. at 40.) Bell alleges Lamb summoned NDOC personnel to move Bell into Unit 8's psychiatric ward because Bell refused to sign a waiver pertaining to Abilify. (*Id*. at 42.) As a result, he claims his personal property was "rolled up" and "removed for destruction or to be donated to charity." (*Id*.) Upon review, the court finds the chief and central (and almost exclusive) focus of this grievance, as well as Bell's civil rights action, was Bell's Abilify treatment and the alleged civil rights violations arising therefrom. Such reasons for filing a grievance fit squarely within the purview of the NDOC's grievance system. (*See* Doc. # 39, Ex. F.) In any event, these allegations against Lamb are not the subject of Bell's Complaint (nor could they be because they were alleged *after* he filed the Complaint), so they are irrelevant to the court's decision herein.

never received a *satisfactory* resolution of his grievances. The response to Informal Grievance # 20062933139 states, in pertinent part, "It appears these issues are resolved. . . . Grievance denied." (Doc. # 39-1, Ex. I at 35.) Bell indicated he "disagree[d]" with that response. Similarly, the response to Informal Grievance # 20062933143 states, in pertinent part, "This grievance has been resolved . . . . Grievance denied." Bell indicated he also "disagree[d]" with this response. The response to Informal Grievance # 20062934446 says nothing about resolution or completion; instead, the response reads in its entirety: "You are grieving multiple issues which is not allowed." Bell did not indicate whether he agreed or disagreed with this response.

That two of the three grievances at issue used the word "resolved" in the response makes no difference as to whether Bell properly exhausted his claim. Under *Harvey*, the obligation to exhaust is not excused when a prison official indicates that a grievance is resolved; rather, it is excused when the prisoner receives a satisfactory response. The record shows Bell received no such response. In fact, the allegations in Bell's Complaint, if not the Complaint itself, clearly demonstrate Bell was not satisfied with the responses to his grievances. In his Complaint, Bell alleges Defendants acted with deliberate indifference to a serious medical need when he was "coerced into taking . . . Abilfy" and denied a request to be taken off the drug. (Doc. # 4 at 3, 4.) These allegations are the same statements he makes in his grievances.

Because Bell provides no other relevant case law to support his position. Accordingly, the court finds the word "resolved" used in response to two of Bell's grievances did not excuse Bell from completing the NDOC's administrative grievance process. Clearly, his grievances were not resolved to his satisfaction.

Bell's next argument is that his failure to comply with AR 740 and exhaust his administrative remedies within the NDOC should be excused because he faced "extraordinary circumstances." (Doc. # 64 at 1-2, 3, 6.) Bell describes three alleged extraordinary circumstances that he faced: "mental deficiency," "illiteracy," and "diminished ability to produce a meaningful petition due to inmate helper fraud and hinderance [sic]." (*Id*. at 6.) In support of this argument, Bell cites to *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004) and *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010).

Neither case deals with illiteracy, mental deficiency, or a "cheating" or "fraudulent" inmate assistant who provided erroneous advice. Indeed, neither case contains facts similar enough to the instant case to warrant application here of the legal reasoning employed therein. In *Giano*, the court held the inmate-plaintiff's failure to exhaust his administrative remedies was "justified" by his "reasonable belief" that prison regulations foreclosed his pursuit of matters relating to disciplinary proceedings through the prison's grievance process. *Giano*, 380 F.3d at 678. In *Nunez*, the court held the inmate-plaintiff's failure to exhaust his administrative remedies was excused because the plaintiff took "reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, *not through his own fault but by the Warden's mistake*." *Nunez*, 591 F.3d at 1224 (emphasis added). These cases do not support Bell's contention that his illiteracy, mental deficiencies, or the alleged misinformation provided by an inmate assistant, excused him from complying with the NDOC's grievance process outlined in AR 740.

As mentioned previously, Bell essentially concedes that he did not exhaust his administrative remedies (in part because he claims he did not know how to do so), but he contends his non-exhaustion should be excused due to "extraordinary circumstances" cited above. A complaint may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies." *Wyatt*, 315 F.3d at 1120. Bell's illiteracy, purported mental deficiencies, and alleged difficulties with an inmate assistant may well have complicated or made more difficult his task of litigating this case. Nevertheless, the court finds none of those circumstances are so extraordinary that the court might be permitted to excuse him from exhausting the NDOC's grievance process and the requirements of the PLRA. *Cf. Booth*, 532 U.S. at 741 n.6 (courts should not read "futility or other exceptions" into section 1997e(a)).

In sum, the record shows Bell failed to exhaust his administrative remedies under AR 740 when he grieved issues related to taking Abilify. Defendants document Bell only grieved at the informal level, and that he failed to grieve at the first and second levels, as required by AR 740 and the PLRA. After the burden shifts to Bell, *see Matsushita*, 475 U.S. at 586, the court finds he fails to set forth specific facts with competent evidence that would raise a genuine issue of fact regarding whether he did so

exhaust, or whether he was excused from the exhaustion requirement.

Accordingly, the court recommends Defendants' Motion for Summary Judgment (Doc. # 39) should be granted because Bell failed to exhaust his administrative remedies regarding the allegations in his Complaint that he was coerced into taking Abilify.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 39).

The parties should be aware of the following:

1. They may file, pursuant to 28 U.S.C. section 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Judge.

2. This Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Judge's Order.

DATED: November 28, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

11